## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOHD ABULZAHAB, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 1:18-cv-12658 |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| UBER TECHNOLOGIES, INC.; | ) |
| RASIER, LLC; PORTIER, LLC; DARA | ) |
| KHOSROWSHAHI; NELSON CHAI; | ) |
| and DOES 1–10, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

1.      Plaintiffs work as drivers for Uber in Massachusetts. Together with other Uber drivers, Plaintiffs form the core workforce necessary for Uber to sell rides—the service that generates Uber's revenue. Rather than treat Plaintiffs as employees, Uber misclassifies Plaintiffs as independent contractors, which means it fails to pay Plaintiffs a minimum wage; fails to pay them overtime; and fails to provide them with various other protections required by federal and state law.

2.      The difference between what Uber should pay Plaintiffs and what it does pay Plaintiffs is significant. The minimum wage in Massachusetts in 2017 and 2018 was $11 per hour. The minimum wage for 2019 is $12 per hour. But Uber frequently pays many Plaintiffs less than $8 per hour.

3.      Uber does not pay Plaintiffs any overtime for the considerable time they drive more than 40 hours in a week.

4.      Although Massachusetts law requires employers to provide employees with earnings statements that allow them to assess their hourly wage, Uber provides earning statements that omit this information.

5.      Uber also fails to provide Plaintiffs with earned sick time as required by Massachusetts law.

6.      Plaintiffs bring this case against Uber to collect what it owes them under federal and state law, and to obtain an injunction requiring Uber to treat them as employees.

## PARTIES

7.      Plaintiffs are Uber drivers who drive in Massachusetts. Details for each Plaintiff are listed in Exhibit A.

8.      Defendant Uber Technologies, Inc. is a Delaware corporation headquartered at 1455 Market Street, San Francisco, CA 94103.

9.      Defendant Rasier, LLC is a Delaware limited liability company headquartered at 1455 Market Street, San Francisco, CA 94103. Rasier is a wholly-owned subsidiary of Uber.

10.      Defendant Portier, LLC is a Delaware limited liability company headquartered at 1455 Market Street, San Francisco, CA 94103. Portier is a wholly-owned subsidiary of Uber.

11.      Defendant Dara Khosrowshahi is an individual, who, on information and belief resides in San Francisco, California. He is individually liable for Uber's violations of the Massachusetts Wage Law because he is Uber's Chief Executive Officer and because he has sufficient control over Uber's employment practices to be liable as an employer under Massachusetts Wage Law.

12.      Defendant Nelson Chai is an individual, who, on information and belief resides in San Francisco, California. He is individually liable for Uber's violations of the Massachusetts

Wage Law because he is Uber's Chief Financial Officer and because he has sufficient control over Uber's employment practices to be liable as an employer under Massachusetts Wage Law.

13.     Defendant Does 1–10 are individual officers, and/or agents, of Uber whose identities are not currently known to Plaintiffs. Plaintiffs will seek leave of this Court to amend this Complaint when the names and capacities of these individuals are ascertained.

## JURISDICTION & VENUE

14.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claim under the Fair Labor Standards Act. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because the state-law claims are so related to the FLSA claim that they form part of the same case or controversy.

15.     The court has personal jurisdiction over Uber, Rasier, Portier, Khosrowshahi, and Chai because each Defendant purposefully engaged in substantial conduct giving rise to Plaintiffs' claims in Massachusetts.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because most Plaintiffs reside in this district and many of the acts and omissions complained of occurred in this district.

## FACTUAL ALLEGATIONS

A.     **Uber's Business**

17.     Travis Kalanick and Garret Camp founded UberCab in San Francisco in 2009.

18.     In a presentation for investors, Kalanick and Camp described UberCab as a "Next-Generation Car Service."

19.     The "UberCab Concept" was a "fast & efficient on-demand car service" that was meant to be "faster & cheaper than a limo, but nicer & safer than a taxicab."

20.     A few months after UberCab was founded, the San Francisco Municipal Transportation Authority and the California Public Utility Commission sent UberCab cease-and-desist letters.

21.     The letters explained that UberCab was operating without necessary permits and licenses.

22.     UberCab did not then apply for any permits or licenses. Instead, it kept operating in the same way and changed its name to Uber.

23.     Effectively all of Uber's revenue has historically come from selling rides.

24.     Customers order rides from Uber using a smartphone app.

25.     When a customer orders a ride, Uber assigns a nearby driver to pick up the customer and complete the requested trip.

26.     The first "Ubers" were black cars.

27.     As Uber grew, it expanded into other product lines.

28.     In 2012, Uber launched "UberX," which offered less-expensive rides in non-luxury vehicles driven by drivers without commercial licenses.

29.     When it launched UberX, Uber renamed its original black-car service UberBLACK.

30.     From there, Uber created UberSUV, UberXL, and eventually UberPOOL.

31.     Uber also entered into food delivery with UberEATS.

32.     Uber, Rasier, and other Uber subsidiaries hold licenses in states and cities around the country to operate as transportation providers.

33.     For example, Uber holds a license from the California Public Utility Commission as a Transportation Charter Party (a "TCP"). A TCP is statutorily defined as an entity "engaged in

the transportation of person by motor vehicle for compensation, over any public highway in [California]." Cal. Pub. Util. Code § 5360.

34.     Through one of its wholly-owned subsidiaries, Uber also holds a permit as Transportation Network Company (a "TNC"). A TNC permit authorizes Uber to transport passengers by motor vehicle over the public highways of the State of California using an online-enabled application or platform.

35.     Another Uber subsidiary holds a Philadelphia certificate of public convenience and describes itself as a "certificated limousine provider."

36.     In Massachusetts, Uber is licensed as a Transportation Network Company, which is defined by statute as an entity that uses a digital network to connect riders to drivers "to pre-arrange and provide transportation."

37.     Today, Uber describes itself as the largest global ridesharing network and claims that its "simple mission" is to make "transportation as reliable as running water everywhere, for everyone."

38.     Part of that mission is "UberEverywhere," which Uber says is the "bold idea that no matter where you are, a reliable ride with Uber is just 5 minutes away."

39.     Each of those rides requires a driver.

40.     Drivers are therefore an integral part of Uber's business.

41.     Uber executives recognize how important drivers are to the company's business. Uber's head of U.S. operations wrote, in a letter to drivers, that "Uber wouldn't exist without you." Other executives have said "Uber wouldn't be what it is without drivers and couriers—they are at the heart of the Uber experience."

42.     Despite recognizing that the drivers are the "heart" of its business, Uber classifies them as independent contractors rather than as employees.

**B.     Uber's Drivers**

43.     Uber drivers receive ride requests through the driver version of the Uber app.

44.     Drivers can go "online" by opening the app on their smartphones. This signals Uber that they are ready to give rides.

45.     Uber can then send ride requests to the drivers via the app.

46.     The driver has no control over when, whether, or how many rides Uber will route to them. And the driver app does not allow the drivers to specify that they wish to receive rides from any particular customer(s).

47.     Uber gives drivers 15 seconds to decide whether to accept a ride request. If the driver declines the request or takes longer than 15 seconds to decide, then Uber withdraws the request and sends it to another driver.

48.     If a driver declines or misses three requests in a row, Uber takes the driver offline.

49.     Uber fires drivers who decline too many ride requests or cancel too many requests after accepting.

50.     Uber prohibits drivers from asking customers to hire them to give rides outside of the app.

51.     Uber requires drivers to display Uber's logo on their vehicles.

52.     Uber uses a 5-star rating system to discipline and fire drivers that do not conform to its standards.

53.     Uber sets the fare that it charges its customers.

54.     Drivers cannot adjust the fare that Uber charges its customers.

55.     Uber also decides what portion of the charged fare is paid to the driver.

56.     Drivers cannot adjust what portion of the charged fare is paid to the driver.

57.     Aside from occasional bonuses and incidental payments, the driver's portion of each fare is the only compensation that Uber pays to drivers.

58.     Uber does not pay drivers for time spent waiting for rides or time spent driving to pick up a customer.

59.     Uber also decides whether to charge customers a cancellation fee. If a customer requests a ride, Uber dispatches the driver, and the driver drives 10 minutes to the customer, but then the customer cancels, it is up to Uber to decide whether to charge the customer a fee. The driver has no say.

60.     Because Uber classifies its drivers as independent contractors rather than employees, it makes no effort to ensure it pays the required minimum wage or overtime.

61.     Uber does not provide paid sick time to drivers.

62.     Uber makes it difficult for drivers to understand their true rate of pay.

63.     The weekly pay statements Uber makes available to drivers do not track the full number of hours worked or mileage driven, both of which a driver would need to determine their true net hourly wage that week.

64.     The monthly and annual statements Uber provides to drivers likewise do not provide the data drivers would need to calculate their true wages.

**C.     Uber is Violating Federal and Massachusetts law**

65.     Courts determine whether a worker is an employee under the Fair Labor Standards Act by looking to the economic substance of the relationship, not the label adopted by an employer.

66.     In assessing that economic relationship, courts look to a non-exhaustive list of factors that includes:

- the degree of the employer's right to control the manner in which the work is to be performed;

- the worker's opportunity for profit or loss depending upon his or her managerial skill;

- the investment of the worker relative to his or her putative employer and whether he or she employs helpers;

- whether the service rendered requires a special skill;

- whether the worker has an ongoing relationship with the employer; and

- whether the service rendered is an integral part of the employer's business.

67.     The ultimate inquiry is whether the worker is truly operating an independent business, free from the economic dominance of an employer.

68.     Under Massachusetts law, a worker is classified as an employee unless the hiring business proves that (A) the worker is free from the control and direction of the hiring business, (B) the worker performs work that is outside the usual course of the hiring entity's business, and (C) the worker is customarily engaged in an independently established trade, occupation, or business and takes the usual steps to establish and promote his or her independent business separate from working for an employer.

69.     Plaintiffs qualify as employees under both federal and Massachusetts law.

70.     Uber exercises significant control over Plaintiffs by determining which rides they are offered; how much they will be paid for each ride; when they receive critical information about each ride; and how to resolve disputes and complaints regarding each ride.

71.     Because Uber sets all the material terms of driving for Uber, Plaintiffs cannot use managerial skill to increase their profits; their compensation turns predominately on the number of hours they drive and whether they respond to the financial incentives Uber sets for them.

72.     Plaintiffs have invested minimal to no capital in their work for Uber, and they do not operate a transportation-based business independent of Uber.

73.     Plaintiffs bring no specialized skill to the job.

74.     Plaintiffs work for Uber on an ongoing basis.

75.     Plaintiffs' work is integral to Uber as they, and other drivers, make up the core workforce that provides Uber's rides.

**D.      The Harm to Plaintiffs**

76.     Plaintiffs all drive for Uber, with each Plaintiff typically driving more than 25 hours per week.

77.     Plaintiffs drive in Massachusetts, typically in the greater Boston area.

78.     Plaintiffs' true wages are difficult to calculate with precision, as Uber's wage statements do not contain weekly mileage figures.

79.     Nevertheless, it is clear that Uber regularly fails to pay Plaintiffs the required minimum wage, after accounting for their expenses.

80.     Uber does not pay Plaintiffs a premium wage when they work overtime.

81.     Uber also has failed to give Plaintiffs paid sick time as required under Massachusetts law.

<u>**CAUSES OF ACTION**</u>

**Count I**
**Fair Labor Standards Act, 29 U.S.C. §§ 206, 207**
**Minimum Wage & Overtime Violations**

82.     Plaintiffs incorporate all previous allegations here.

83.     Plaintiffs are employees entitled to the protections of the Fair Labor Standards Act.

84.     Uber has violated the Act by willfully failing to pay Plaintiffs the minimum wage and overtime the Act requires.

85.     Plaintiffs therefore seek an injunction, unpaid wages, liquidated damages, interest, and attorneys' fees and costs.

**Count II**
**M.G.L c. 149 §§ 148, 148B, and 150, and Mass. Gen. L. c. 151**
**Massachusetts Minimum Wage & Overtime Violations**

86.     Plaintiffs incorporate all previous allegations here.

87.     Plaintiffs are employees entitled to the protections of M.G.L. c. 149 §§ 148, 148B, and 150, and M.G.L. c. 151.

88.     Uber has violated these provisions by failing to pay Plaintiffs the minimum wage and overtime they require.

89.     Plaintiffs therefore seek an injunction, unpaid wages, treble damages, interest, and attorneys' fees and costs.

**Count III**
**M.G.L c. 149 § 148C**
**Failure to Pay Sick Time**

90.     Plaintiffs incorporate all previous allegations here.

91.     Plaintiffs are employees entitled to the protections of M.G.L. c 149 § 148C.

92.     Uber has violated this provision by failing to provide Plaintiffs with paid sick time as required.

93.     Plaintiffs therefore seek an injunction, an award of previously earned sick time, and attorneys' fees and costs.

## PRAYER FOR RELIEF

94.    Plaintiffs seek a judgment against Uber that incorporates the following relief:

    (a)  A declaratory judgment that the policies and practices complained of herein
         are unlawful under federal and Massachusetts law;

    (b)  An award of appropriate equitable and injunctive relief to remedy Defendants'
         violations of the federal and Massachusetts law, including, but not limited to,
         an order enjoining Defendants from continuing their unlawful policies and
         practices;

    (c)  An award of damages, statutory penalties, and restitution to be paid by
         Defendants according to proof;

    (d)  An award of reasonable attorneys' fees and costs incurred by Plaintiffs in
         filing this action;

    (e)  An award of pre- and post- judgment interest to Plaintiffs;

    (f)  Such further relief as this court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable by jury.

Date:  December 31, 2018                    Respectfully Submitted,

/s/ Josh Gardner
Josh Gardner (BBO No. 657347)
  josh@gardnerrosenberg.com
GARDNER & ROSENBERG P.C.
One State Street, Fourth Floor
Boston, MA 02109
(617) 390-7570

Ashley Keller (pro hac vice forthcoming)
  ack@kellerlenkner.com
Tom Kayes (pro hac vice forthcoming)
  tk@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
(312) 741-5220

Warren Postman (pro hac vice forthcoming)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Plaintiffs*